UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINA M. ISOM,

    Plaintiff,

v.                                                       Case No. 8:18-cv-2859-T-30CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be affirmed.

I.

    The Plaintiff was born in 1968, is high school educated, and has past relevant work experience as a compound coating machine off-bearer and a registered nurse. (R. 25). In December 2016, she applied for DIB, alleging disability as of June 1, 2014, due to narcolepsy, depression, anxiety, fibromyalgia, hypothyroidism, and chronic

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit.

back pain. (R. 189-95, 221). The Social Security Administration (SSA) denied her application both initially and on reconsideration. (R. 84-117).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on March 1, 2018. (R. 32-81). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. A vocational expert (VE) also testified.

In a decision dated April 20, 2018, the ALJ found that the Plaintiff: (1) was insured for DIB through September 30, 2019, and had not engaged in substantial gainful activity since her alleged onset date; (2) had the severe impairments of narcolepsy, depression, anxiety, obesity, bipolar disorder, and "combined T8-T9 very small and thin disc herniation with cranial extension together with minimal degenerative disc disease of the lumbar spine;" (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work with certain additional limitations, including—of relevance here— that she could not work at unprotected heights, operate dangerous machinery, or drive a motor vehicle;[2] and (5) based in part on the VE's testimony, could not perform her past relevant work but was capable of performing jobs that existed in significant

---

[2] The other restrictions found by the ALJ were that the Plaintiff was limited to frequent crouching, bending, stooping, kneeling, crawling, and climbing stairs/ramps; could never climb ladders or scaffolds; could understand simple, routine, and repetitive tasks, with the ability to make basic decisions and simple changes; and could occasionally interact with the public, coworkers, and supervisors. (R. 22).

numbers in the national economy. (R. 17-27). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 3-8). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[4] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

     A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. §§ 405(g); 1383(c)(3). Judicial review is limited to determining whether the decision is supported by substantial evidence and the Commissioner applied the correct legal standards. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide

the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court accords deference to the Commissioner's factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff raises two interrelated arguments in her appeal, both of which relate to the ALJ's RFC assessment: (1) the ALJ erred by not considering or accommodating the Plaintiff's severe impairment of narcolepsy; and (2) the ALJ erred by according significant weight to the opinion of a non-examining physician, Max Kattner, M.D. (Doc. 26 at 4-10). The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence, that the ALJ properly accounted for the Plaintiff's narcoleptic condition, and that the ALJ's evaluation of the medical opinion evidence, including that of Dr. Kattner, is buttressed by the record. *Id.* at 10-17. Upon a thorough review of the record and the parties' submissions, I find no cause for reversal or remand.

A.

As noted above, at step four of the sequential evaluation process, the ALJ must determine, among other things, the claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must examine all of the relevant evidence of record and assess what a claimant can do in a work setting despite any physical or mental restrictions caused by her impairments and related symptoms. *Id.* at § 404.1545(a)(1).

In rendering this determination, the ALJ must consider any medical opinions of record, all of the claimant's medically determinable impairments (both severe and non-severe), the total limiting effects of each impairment, and the claimant's subjective symptoms. *Id.* at §§ 404.1520(e), 404.1545(a)(2); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). On appeal, the claimant bears the burden of showing that the ALJ's RFC determination is deficient. *Schmidt v. Comm'r of Soc. Sec.*, 2018 WL 3805863, at *1 (M.D. Fla. Aug. 10, 2018) (citing *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013)).

In an effort to meet her burden here, the Plaintiff contends that her narcoleptic condition caused greater work-related restrictions than those the ALJ included in his RFC finding. In particular, she claims that, although the ALJ found her narcolepsy to be severe, he failed to include any functional limitations resulting from this impairment. In support of her argument, the Plaintiff points to her testimony at the hearing that she is extremely tired throughout the day and often sleeps sixteen hours per day. This argument fails for a number of reasons.

To begin, contrary to the Plaintiff's suggestion, the fact that the ALJ determined the Plaintiff's narcolepsy to be severe does not mean that he was required to impose any particular restrictions. It is well settled in this regard that "[s]evere impairments do not necessarily result in specific functional limitations." *Owens v. Colvin*, 2015 WL 12856780, at *1 (M.D. Fla. Oct. 15, 2015) (citing *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2019); *Davis-Grimplin v. Comm'r, Soc. Sec.*

6

*Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014)); *Moore v. Barnhart,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of . . . impairments does not reveal the extent to which they limit . . . ability to work or undermine the ALJ's determination in that regard.") (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)).

Putting aside this threshold issue, it is evident from the record that the ALJ did, in fact, take into account the Plaintiff's narcoleptic condition in determining her RFC. As noted above, the limitations he imposed included that the Plaintiff could not work at unprotected heights, operate dangerous machinery, or drive a motor vehicle. While he did not explicitly ascribe these restrictions to the Plaintiff's narcolepsy, it is common sense that he deemed such limitations appropriate to address the possibility the Plaintiff might become drowsy or suddenly fall asleep at her place of employment. *See, e.g., Cole v. Berryhill*, 2019 WL 936661, at *7 (N.D. Ala. Feb. 26, 2019) (finding the ALJ implicitly accounted for narcolepsy where he noted, among other things, the need to "avoid hazardous machinery during a regularly scheduled workday"). This conclusion is further supported by the fact that the ALJ specifically acknowledged the Plaintiff's hearing testimony that she suffers from "extreme day time drowsiness and sleeps 16 hours per day due to narcolepsy" (R. 22); that he found her narcoleptic condition to be severe and to significantly limit her ability to perform basic work activities (R. 19); and that he did not expressly assign these restrictions to any of the Plaintiff's other impairments.

Notably, the Plaintiff does not cite to any medical evidence in the record to support her claim that she was more limited than the ALJ assessed her to be. Nor

have I found any. Indeed, none of the Plaintiff's doctors suggested that her narcolepsy required restrictions beyond those imposed by the ALJ.

The Plaintiff's assertion that the ALJ failed to consider her subjective complaints regarding her narcolepsy is also without merit. As the Commissioner contends, the ALJ satisfied his duty to evaluate the Plaintiff's stated symptoms and set forth record evidence to support his assessment. (R. 22-25). That evidence included medical records pre-dating the Plaintiff's alleged onset date; records from her primary care physician, Matthew Nesseti; treatment notes from Florida Rehabilitation Associates; the report of state agency consultative examiner, John Super, Ph.D.; and the opinions of three state agency non-examining doctors. *Id*. Based upon his consideration of these items as well as his own observations of the Plaintiff at the hearing, the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (R. 22-23).

The Plaintiff fails to demonstrate that the ALJ erred in making such a finding. In fact, with the exception of Dr. Kattner's opinion (addressed below), the Plaintiff does not meaningfully contest the ALJ's evaluation of the above evidence relative to her complaints. Rather, the Plaintiff's memorandum merely reiterates her diagnosis of narcolepsy, generalized statements about the effects of such a condition, and her subjective allegations of extreme tiredness—subjective allegations that, as noted above, the ALJ acknowledged and as least implicitly discounted.

In sum, nothing in the Plaintiff's brief, nor in my independent review of the record, leads to the conclusion that the ALJ's determinations regarding the limiting effects of her narcolepsy are unsupported by substantial evidence or are otherwise in error. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."); *Davis v. Astrue*, 346 F. App'x 439, 441 (11th Cir. 2009). To the contrary, I am satisfied that the ALJ sufficiently evaluated such complaints.

The Eleventh's Circuit's decision in *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001), upon which the Plaintiff relies, does not alter my conclusion. In that case, the ALJ disregarded a medical diagnosis that the claimant suffered from chronic fatigue syndrome (CFS) "because there [wa]s no definite test or specific laboratory findings to support such a diagnosis." *Id.* at 1220. The Eleventh Circuit reversed the Commissioner's decision on appeal, noting that the "lack of [such definitive] testing . . . does not preclude [a] diagnosis of CFS." The Court went on to find that "[b]ecause the ALJ ignored the symptoms of CFS, as well as [the claimant's] other subjective complaints regarding symptoms related to CFS, the ALJ did not meaningfully conduct an analysis of the effect of CFS on [the claimant's] ability to work." *Id.*

The circumstances present in this case are readily distinguishable from those in *Vega*. As explained above, the ALJ here determined the Plaintiff's narcolepsy to be severe, noted her testimony regarding her alleged symptoms, and—while discounting

9

her subjective complaints—implicitly accounted for her narcoleptic condition in his RFC finding.

### B. Dr. Kattner's Opinions

I am likewise unpersuaded by the Plaintiff's challenge to the ALJ's RFC determination on the grounds that the ALJ accorded undue weight to the opinion of Dr. Kattner, a non-examining physician. In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[5] In evaluating medical opinions, an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The ALJ must consider several factors in this regard, including the examining and treatment relationship between the claimant and the doctor, the length of the treatment, and the degree to which the medical opinion at issue is internally consistent with and otherwise buttressed by the record. 20 C.F.R. § 404.1527(c).

The Regulations set forth three tiers for the sources of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)). Unlike the opinion of a

---

[5] Although this regulation was amended effective March 27, 2017, the new regulation only applies to applications for benefits submitted on or after that date. 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed in December 2016, the older version of the regulation applies here.

treating physician, which is ordinarily afforded substantial or considerable weight, *Winschel*, 631 F.3d at 1179 (citation omitted), "the weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence," *Saternus v. Comm'r of Soc. Sec.*, 662 F. App'x 883, 886 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(e)).  A non-examining doctor's assessment that contradicts an examining doctor's medical report is given little weight and cannot, standing alone, constitute substantial evidence.  *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citation omitted).  On the other hand, the ALJ may rely on a non-examining physician's opinion if it does not conflict with an examining physician's medical findings.  *Id.* at 585.

Here, Dr. Kattner reviewed the Plaintiff's claim at the reconsideration level, completed a physical RFC assessment, and opined that the Plaintiff could perform light work.  (R. 110-11).[6]  The ALJ gave Dr. Kattner's opinion "significant weight" because "it [wa]s consistent with the objective evidence showing that the claimant received essentially sporadic, conservative treatment for her physical impairments along with essentially normal results on physical exams as well as [a] slight disc bulge in her thoracic spine."  (R. 25).  That said, the ALJ ultimately rendered an RFC finding that was more restrictive than Dr. Kattner's assessment.

---

[6] The ALJ mistakenly stated in his decision that Dr. Kattner also found the Plaintiff to have postural and environmental limitations, which the ALJ then included as part of his RFC finding. (R. 25). Dr. Kattner's report, however, indicates that he believed the Plaintiff had *no* such restrictions. (R. 110-11).

The Plaintiff now asserts that the ALJ's assessment of the weight to be afforded Dr. Kattner's evaluation is flawed in two respects: (1) Dr. Kattner used only three medical reports to support his opinions; and (2) Dr. Kattner did not address the Plaintiff's narcoleptic condition. (Doc. 26 at 9). Neither of these assertions has merit.

As an initial matter, although it is true that Dr. Kattner specifically cited only three treatment entries and did not explicitly reference the Plaintiff's narcolepsy, that does not necessarily mean he failed to consider other treatment reports or to take into account the Plaintiff's sleep issues. And, as noted above, the mere fact that he did not ascribe a particular functional limitation to the Plaintiff's narcolepsy does not compel the conclusion that he did not consider that condition in making his assessment. This is particularly true given the fact that the record indicates Dr. Kattner had the benefit of all of the Plaintiff's medical records listed in his report, including those related to the Plaintiff's treatment for narcolepsy. (R. 101-104).

Moreover, even if Dr. Kattner did not review all of the Plaintiff's medical records before rendering his opinion or offering his RFC assessment, the ALJ—who was responsible for making the ultimate determination—did have access to the entire record, including the Plaintiff's testimony. As a result, he was well positioned to determine whether Dr. Kattner's opinion was buttressed by and consistent with the evidence of record and thus whether to afford that opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ—who makes the

12

ultimate determination—had access to the entire record, including the claimant's testimony). Because the ALJ engaged in such an analysis here, he was free to give significant weight to Dr. Kattner's assessment given his clearly articulated finding that the record supported such a determination. *See* 20 C.F.R. § 404.1527(e)(2)(i); Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (finding the ALJ clearly articulated reasons for giving significant weight to non-examining physician's opinions by stating that his opinions were consistent with the objective medical evidence); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (noting that the ALJ did not err in relying on the reports of non-examining physicians where the opinions did not otherwise contradict the other evidence of record).

Finally, to the extent the ALJ erred at all in his evaluation of Dr. Kattner's opinion (a finding I do not make), any such error was harmless. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss weight given to a physician's opinion constituted harmless error when the opinion did not contradict the ALJ's finding and was substantially similar to that of another doctor whose opinion was given substantial weight); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's

findings). As discussed above, no treating or examining doctor opined that the Plaintiff had greater restrictions than those assessed by the ALJ, and the ALJ's review of the record as a whole provides substantial evidence to support his RFC finding. Furthermore, the Plaintiff herself does not point to evidence of any additional functional limitations beyond those the ALJ imposed. The fact that the ALJ's RFC finding is more restrictive than Dr. Kattner's assessment further militates against a finding of harm to the Plaintiff. As a result, I find no basis for reversal or remand.

IV.

For the foregoing reasons, I recommend:

1. The Commissioner's decision be affirmed.

2. The Clerk of Court be directed to enter Judgment in the Defendant's favor and to close the case.

Respectfully submitted this 30th day of January 2020.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives

that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable James S. Moody, Jr., United States District Judge
Counsel of record